IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **TANYA S. CRAWFORD,**<br>*Plaintiff,*<br>*v.*<br>**VISTA EDA GROUP LLC**,<br>*Defendant.* | Case No.<br>**CLASS ACTION COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Tanya S. Crawford ("Plaintiff Crawford" or "Crawford") brings this Class Action Complaint and Demand for Jury Trial against Defendant Vista Eda Group LLC d/b/a Vista Eda Group ("Defendant" or "Vista Eda Group") to stop Defendant from violating the Telephone Consumer Protection Act ("TCPA") by send text messages to consumers without consent including texts to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Crawford, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including an investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Crawford is a resident of Poughkeepsie, New York.

2. Defendant Vista Eda Group is a company registered in Sheridan, Wyoming. Defendant Vista Eda Group conducts business throughout this District and throughout New York.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 (“TCPA”).

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term, “Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people’s representatives in Congress have been fighting back.” *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in June 2025 alone, at a rate of 148.8 million per day. www.robocallindex.com (last visited July 27, 2025).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Vista Eda Group purchases properties from consumers for cash.[3]

14. Vista Eda Group places calls and sends text messages to consumers to generate business.

15. Steven Menau, a managing member of Vista Eda Group has posted at least twice on Facebook about hiring cold callers to place calls and send text messages to consumers:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://vistaedagroup.com/

**Steven Menau**
April 7 ·

NOW HIRING: Experienced Cold Caller (Remote | Commission-Based | Real Estate)

Vista EDA Group is growing — and we're looking for a skilled, fluent English-speaking Cold Caller to join our real estate investment team!

This is a remote, commission-only opportunity with serious income potential for someone who knows how to convert conversations into leads.

What We Offer:
• Work-from-home flexibility
• Make your own schedule (10 AM – 8 PM EST, Mon–Fri)
• Scripts, systems, and ongoing support
• Earn per qualified lead or closed deal — no income cap!

What We're Looking For:
• 2+ years of cold calling or phone sales experience (real estate is a big plus)
• Fluency in English — clear, confident communication is a must
• Self-motivated, reliable, and results-driven
• Comfortable working commission-only (you earn what you close)

Your Role:
You'll be calling property owners in New Jersey, identifying seller motivation, qualifying leads, and handing off warm prospects to our Acquisitions team.

Interested?
DM me with your experience or tag someone who'd crush this role!

#VistaEDAGroup #RealEstateJobs #ColdCalling #RemoteWork #CommissionOnly #WorkFromHome #NowHiring #SalesJobs #LeadGeneration [4]

**Steven Menau**
May 24, 2024 ·

**Join Vista EDA Group as a Cold Caller and Acquisition Specialist**

**Company:** Vista EDA Group
**Position:** Cold Caller and Acquisition Specialist
**Location:** Fully Remote
**Salary:** $4 to $10 per hour based on performance, plus commissions
**Hours:** Full-time, 40 hours per week, Monday to Friday, 10 AM - 6 PM Eastern Standard Time

**Requirements:**
* Fluent in English
* Strong internet connection
* Proven track record of closing deals
* Minimum 2 years of experience in deal closing
* Minimum 3 years of experience in the real estate industry
* Experience in sales
* Excellent people and speaking skills

**Responsibilities:**
* Conduct cold calling to generate leads and opportunities
* Utilize automation tools for efficient lead management
* Implement SMS prospecting strategies to engage potential clients
* Follow up with leads to nurture relationships and drive conversions [5]

---

[4] https://www.facebook.com/groups/ColdCallersandClosers/posts/1658688048186566/
[5] https://www.facebook.com/groups/573988236656558/search/?q=Vista

16. Vista Eda Group sends text messages to consumer phone numbers that are registered on the DNC.

17. The text messages that Vista Eda Group sends are solicitations.

18. Consumers incur a cost when selling a property to Vista Eda Group.

19. Vista Eda Group purchases a property for a value that is below the market value:

> **Q: Do you pay fair prices for properties?**
> A: Many of the houses we purchase are below market value. We do this so we can resell it at a profit to another homeowner. We are looking to get a fair discount on a property. In our experience, many sellers aren't necessarily expecting a large "windfall" on the property. Instead, they appreciate that we can offer cash, we close very quickly (no waiting for financing), and no time, effort, or expense is required on your part to fix up the property or pay agent fees. If that's what you're looking for and you see the value in getting your house sold fast, let's see if we can come to a win-win price for both parties. Our no-obligation pricing commitment means that you don't have to move forward with the offer we give... but it's good to know what we're offering! [6]

This is also evident from a pros and cons guide that is available on the Vista Eda Group website:

> The main cost with working with a real estate investor is the fact that an investor can't pay full retail value for a house. They usually look to buy houses at discounts that allow for them of course to turn a small profit on the deal... just like any other business turns a profit. But, for many people... selling at a lower price makes sense in return for the elimination of commissions and fee and the much faster timeline to sell your house. [7]

20. In addition, Vista Eda Group covers all repair/remodeling costs, which means these costs are deducted from the value of the property:

[6] https://vistaedagroup.com/faq/
[7] https://cdn.carrot.com/reports/SellingtoARealEstateInvestor.pdf - page 7



**No Repairs Needed**

**We deal with repairs ourselves when we buy your house.** We'll make it our responsibility to fix everything from leaking roofs to complete remodels. [8]

21. According to NewAgainHouses.com, a company that purchases properties for cash, cash buyers like Vista Eda Group use what is called the 70% rule. This rule accounts for holding costs, insurance, overhead and other expenses, including profit. It does not account for remodeling.

22. NewAgainHouses.com explains that a property worth $100,000 can result in a $30,000 cash offer:

**ESTIMATED SALES PRICE X 70% – REHAB COSTS = MAX OFFER**

Typically with this calculation, the real estate investor will gross 30% in additional income. This money will go toward holding costs, insurance, overhead, and other expenses. Their maximum offer will typically yield around an 8-15% profit after all other expenses are taken care of.

Using the formula above, assume you are selling a house that needs $40,000 in rehab to be able to sell it for $100,000. The maximum offer you should expect would be:

**100,000 X 70% – 40,000 = $30,000**

You would end up receiving a $30,000 cash offer for your home. This may seem low, but the real estate investor needs to have the funds to remodel the home and sell it for a modest profit. [9]

23. In comparison, a consumer can sell their property on their own without an agent, or sell using a real estate agent that will result in a cost of 5-6% in commissions, plus closing costs/taxes, which is far less than what it would cost selling a property to a cash buyer.

---

[8] https://vistaedagroup.com/

[9] https://newagainhouses.com/blog/how-to-determine-a-fair-cash-offer-for-your-home

24. As a result of the above, consumers incur a cost by doing business with the Defendant, as they will receive a depreciated cash offer for their property that takes into account the costs of renovations, other associated purchasing costs, and the need to earn a profit.

25. In response to these text messages, Plaintiff Crawford brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

**PLAINTIFF CRAWFORD'S ALLEGATIONS**

26. Plaintiff Crawford is the sole owner and user of her cell phone number ending in 7337.

27. Plaintiff Crawford has owned her cell phone number for over 20 years.

28. Plaintiff Crawford registered her cell phone number on the DNC on February 20, 2008.

29. Plaintiff Crawford uses her cell phone number for personal use only as one would use a landline telephone number in a home.

30. Plaintiff Crawford uses her cell phone primarily to communicate with friends and family. It is also used to schedule personal appointments and for other household purposes.

31. Plaintiff Crawford's cell phone plan is paid for by herself. It is not reimbursed by a business.

32. Plaintiff Crawford has never had her cell phone number associated with a business.

33. This phone number is not used in any business or marketing materials.

34. On July 11, 2025 at 11:07 AM, Plaintiff Crawford received an unsolicited text message to her cell phone from 606-554-6598:




35. As per the above screenshot, the text message identifies the company name Vista Eda, which is short for Vista Eda Group.

36. On July 14, 2025 at 11:16 AM, Plaintiff Crawford received a 2nd unsolicited text message to her cell phone from 606-554-6598:




37. On July 17, 2025 at 11:15 AM, Plaintiff Crawford received a 3rd unsolicited text message to her cell phone from 606-554-6598:




38. Plaintiff Crawford has never done business with Vista Eda Group.

39. Plaintiff Crawford is not looking to buy and/or sell a property.

40. The unauthorized solicitation text messages that Plaintiff received from Defendant Vista Eda Group have harmed Plaintiff Crawford in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

41. Seeking redress for these injuries, Plaintiff Crawford, on behalf of herself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

42. Plaintiff Crawford brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Vista Eda Group called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.

43. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Crawford anticipates the need to amend the Class definition following appropriate discovery.

44. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

45. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any

questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant sent multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text message;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

46. **Adequate Representation**: Plaintiff Crawford will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Crawford has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Crawford and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Crawford nor her counsel have any interest adverse to the Class.

47. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Crawford. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it

would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Crawford and the Do Not Call Registry Class)**

48. Plaintiff repeats and realleges paragraphs 1-47 of this Complaint and incorporates them by reference herein.

49. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

50. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

51. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Crawford and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

52. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Crawford and the Do Not Call Registry Class received more than one call in a 12-month period made by or on behalf of

the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

53. As a result of Defendant's conduct as alleged herein, Plaintiff Crawford and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

54. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Crawford requests a jury trial.

**TANYA S. CRAWFORD**, individually and on behalf of all others similarly situated,

DATED this 14th day of September, 2025.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
COLEMAN PLLC
11 Broadway, Suite 615
New York, NY 10001
Telephone: (877) 333-9427

Avi R. Kaufman (pro hac vice forthcoming)
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*